UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RONALD TEEL CHARLTON,

        Petitioner,

                                  CASE NO. 5:06-CV-11634

   v.                             JUDGE JOHN CORBETT O'MEARA
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

THOMAS K. BELL,

        Respondent.[1]

_____/


# REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    D.    *Double Jeopardy (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        1.    *Waiver* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.    *Merits of the Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    E.    *Sentencing Claim (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    F.    *Sufficiency of the Information (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    G.    *Plea Claims (Claims IV-V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        1.    *Lack of Factual Basis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        2.    *Illusory Plea Bargain* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        3.    *Voluntariness of the Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    H.    *Ineffective Assistance of Counsel (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    I.    *Vagueness of CSC-II (Claim VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    J.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

---

[1]By order entered on this date, Thomas K. Bell has been substituted for Sherri L. Burt as the proper respondent in this action.

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Ronald Teel Charlton is a state prisoner, currently confined at the Parr Highway Correctional Facility in Adrian, Michigan.

2.      On January 29, 2003, petitioner was convicted of one count of second degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c, pursuant to his plea of *nolo contendere* in the Oakland County Circuit Court. On February 11, 2003, he was sentenced as an habitual offender to a term of 8-30 years' imprisonment.

3.      Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims:

I.      DEFENDANT WAS DEPRIVED OF HIS AMS V [sic] AND XIV RIGHT TO BE FREE FROM DOUBLE JEOPARDY.

II.     DEFENDANT WAS DENIED HIS AMS IV [sic] AND XIV RIGHTS OF DUE PROCESS WHEN THE TRIAL COURT ASSESSED 15 POINTS FOR ASPORTATION PURSUANT TO OV 8, THUS INCORRECTLY SCORING HIS GUIDELINES.

III.    DEFENDANT WAS DENIED HIS AMS IV [sic] AND XIV RIGHTS OF DUE PROCESS WHEN THE TRIAL COURT DENIED HIS MOTION TO QUASH THE INFORMATION.

Petitioner also filed a *pro per* supplemental brief, raising the following additional claims:

I.      DEFENDANT WAS DENIED HIS VI AMS [sic] RIGHTS, AND HIS PLEA WAS ENTERED INVOLUNTARY, AND UNINTELLIGENTLY MADE, BECAUSE COUNSEL'S FAILURE TO INVESTIGATE, AND TO UNCOVER RELEVANT EVIDENCE.

II.     BECAUSE THE DEFENDANT PLED NOLO CONTENDERE, DID THE

TRIAL COURT CLEARLY ERRED [sic] IN FINDING IT COULD PROPERLY ACCEPT THE PLEA BY RELYING SOLELY ON THE PRELIMINARY EXAMINATION TRANSCRIPTS, EVEN THOUGH THE TRANSCRIPTS ONLY SUPPLIED PROBABLE CAUSE AND LACKED FACTUAL BASIS THAT THE DEFENDANT WAS IN FACT GUILTY OF THE CHARGE TO WHICH HE PLED TO.

III.  DEFENDANT WAS DENIED HIS XIV AMS [sic] DUE PROCESS, UNDER EQUAL PROTECTION CLAUSE, IT REQUIRES THAT THE STATE GIVE TO SIMILARLY SITUATED PERSONS OF CLASS SIMILAR TREATMENT UNDER THE LAW.

IV.  DEFENDANT WAS DENIED HIS XIV AMS [sic] DUE PROCESS RIGHTS WHEN THE SUFFICIENCY OF THE INDICTMENT AS TO COUNT 2 OF THE PEOPLE'S INFORMATION, IN THAT IT LACKED THE ESSENTIAL ELEMENTS OF THE CRIME CHARGED WAS USED TO INDUCE A PLEA AGREEMENT, THEREFORE THE PLEA AGREEMENT WAS INVOLUNTARY AND INVALID.

V.  DEFENDANT ARGUES THAT THE TRIAL COURT ERRED IN ACCEPTING THE PLEA AGREEMENT, BECAUSE THE PLEA WAS ILLUSORY, AND IN VIOLATION OF 5TH AMENDMENT, UNDER THE DOUBLE JEOPARDY CLAUSE OF THE UNITED STATES CONSTITUTION, BECAUSE COUNT 1, 2, AND 3 STEMMED FROM THE SAME TRANSACTION, AND THE SAME CONTINUOUS EPISODE.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented." *See People v. Charlton*, No. 253772 (Mich. Ct. App. Apr. 28, 2004).

4.  Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. In addition, petitioner raised the following new claims:

I.  BECAUSE THE PLEA AGREEMENT BETWEEN THE DEFENDANT AND THE PROSECUTOR WAS THE PLEA ILLUSORY, BECAUSE THE PLEA AGREEMENT DIDN'T HAVE ANY VALUE TO IT AND BECAUSE THE DEFENDANT HAD THE RIGHT TO APPEAL THE APPLICABILITY OF THE STATUTE ALREADY, SO THE PLEA AGREEMENT WAS WHOLLY UNNECESSARY AND ILLUSIONARY [sic].

3

II.     WAS THE DEFENDANT DENIED HIS XIV AM RIGHT WHEN HE WAS CHARGED AND CONVICTED UNDER THE WRONG STATUTE, ACCORDING TO THE FACTS OF THE CASE, AND THE STATUTE CONSTRUCTION TO THE CHARGE TO WHICH HE PLED TO AND IS THE STATUTES CRIMINAL SEXUAL CONDUCT 2D DEGREE (RELATIONSHIP) MCL 750.520C(B)(i)(iii) AND GROSS INDECENCY 750.338b VOID FOR VAGUENESS AS IT IS APPLIED TO THE CASE AT BAR.

III.    WAS THE DEFENDANT DEPRIVED OF HIS XIV AM RIGHTS (DUE PROCESS) OF THE EQUAL PROTECTION CLAUSE, AND HIS PRIVACY RIGHTS, WHEN BECAUSE OF THE STATUTORY INTERPRETATION OF LEGISLATIVE INTENT WHEN USING THE TERM "POSITION OF AUTHORITY" AS IT APPLIED TO THE CRIMINAL SEXUAL CONDUCT 2D DEGREE, MCL 750.520C(B)(iii) AND IN THE CASE AT BAR.

IV.     BECAUSE THE DEFENDANT PLED NOLO CONTENDERE, DID THE TRIAL COURT ERROR [sic] IN FINDING SUFFICIENT FACTUAL BASIS TO ACCEPT THE CONDITIONED NOLO CONTENDERE PLEA, WHEN THE EVIDENCE AND RECORD WAS LACKING THE ESSENTIAL ELEMENTS OF THE CRIME TO WHICH THE DEFENDANT PLED TO.

The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Charlton*, 471 Mich. 948, 690 N.W.2d 106 (2004).

5.      Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising claims that the plea was involuntary, illusory, and based on perjured testimony; that his trial and appellate attorneys were ineffective; and that the statute under which he was convicted is void for vagueness. The trial court denied the motion on February 13, 2006, concluding that the claims were raised on petitioner's direct appeal and thus could not be relitigated pursuant to MICH. CT. R. 6.508(D)(2). It does not appear that petitioner appealed this decision.

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on April 5, 2006.  As grounds for the writ of habeas corpus, he raises seven claims that were raised, in some form, in the state courts: (1) double jeopardy; (2) improper scoring of the sentencing guidlines; (3) improper denial of the motion to quash the information; (4) lack of factual basis for plea; (5) involuntary plea; (6) ineffective assistance of trial and appellate counsel; and (7) the statute under which he was convicted is void for vagueness.  Petitioner filed a supplemental brief in support of the petition on April 24, 2006.

7.     Respondent filed his answer on October 10, 2006.  He contends that petitioner's claims are without merit or not cognizable on habeas review.

8.     Petitioner filed a reply to respondent's answer on November 27, 2006.

B.     *Factual Background Underlying Petitioner's Conviction*

At the time of the crime for which petitioner was convicted, petitioner was a loss prevention officer at T.J. Maxx.  At the preliminary examination, the 15-year-old victim testified that petitioner stopped her after she stole a bathing suit from the T.J. Maxx store in Southfield, Michigan. Petitioner took her into a locked room to discuss the shoplifting incident.  While in the room, petitioner told her to take off her clothes, and she complied because she was afraid.  Petitioner then told her to lay face down on the floor, and to put her hands behind her back and spread her buttocks with her hands.  Petitioner then masturbated until he ejaculated on her back, neck, and buttocks. Petitioner wiped her back with a t-shirt.  *See* Prelim. Exam. Tr., dated 5/22/02, at 9-21.  The prosecutor charged petitioner with second degree criminal sexual conduct (CSC-II), gross indecency between a male and female, and indecent exposure.  Prior to his plea, petitioner moved to quash the count of the information charging CSC-II, arguing that the facts adduced at the preliminary examination did not establish "sexual contact" under the statute.

On January 29, 2003, petitioner pleaded *nolo contendere* to the CSC-II count, in exchange for the prosecutor's agreement to dismiss the remaining two counts. Petitioner also reserved his right to appeal the trial court's denial of his motion to quash the information. Prior to accepting petitioner's plea, the trial court explained the maximum and minimum sentences to petitioner, and petitioner indicated that he understood these possible sentences. *See* Plea Tr., at 4-5. The court also explained to petitioner the rights petitioner was giving up by pleading *nolo contendere*, including the rights to a jury trial, to call witnesses and have compulsory process, and to remain silent or to testify. Petitioner indicated that he understood these rights and that he was giving them up by pleading *nolo contendere*. *See id*. at 5-6. Petitioner indicated that he was making the plea freely and voluntarily, and that no promises had been made to him other than those set forth in the plea agreement. *See id*. at 6-8. Petitioner further indicated that there had been no threats, force, or compulsion used to induce his plea, and that it was his own choice to plead *nolo contendere*. *See id*. at 8. The court then used the preliminary examination transcript to establish a factual basis for the plea. *See id*. at 10. The court accepted the plea, concluding that it was understanding, voluntary, and accurate. *See id*. at 11.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by

the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Double Jeopardy (Claim I)*

In his first claim, petitioner contends that he was deprived of his Fifth Amendment right to be free from double jeopardy when he was charged with CSC-II, gross indecency, and indecent exposure arising from the single act of exposing himself, masturbating, and ejaculating on the victim. The Court should conclude that petitioner is not entitled to habeas relief on this claim, for

two reasons.

1.      *Waiver*

First, petitioner's double jeopardy claim is waived by his *nolo contendere* plea.  "It is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects."  *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005).  As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  It is equally well established that a double jeopardy claim is not jurisdictional.  Rather, "the defense of double jeopardy is personal and is capable of waiver" and forfeiture.  *United States v. Branham*, 97 F.3d 835, 842 (6th Cir. 1996) (citing *United States v. Broce*, 488 U.S. 563, 568 (1989)).  Thus, petitioner's plea constitutes a waiver of his double jeopardy claim.  *See Broce*, 488 U.S. at 573-74.[2]

---

[2]In *Menna v. New York*, 423 U.S. 61 (1975), the Court held that "[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty."  *Id*. at 62.  As the *Broce* Court explained, however, the *Menna* Court added the important qualification:  "We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that-judged on its face-the charge is one which the State may not constitutionally prosecute."  *Menna*, 423 U.S. at 63 n.2.  Thus, the *Broce* Court explained, a double jeopardy claim is not viable following a guilty plea where the indictment on its face describes separate crimes.  *See Broce*, 488 U.S. at 576.  As discussed below, because a prosecutor may charge multiple crimes arising from the same facts in a single indictment without running afoul of the Double Jeopardy Clause, the allegedly duplicitous charges in petitioner's Information were not, on their face, charges which the state was constitutionally prohibited from prosecuting, and thus petitioner may not collaterally attack his plea through his double jeopardy claim under *Broce*.  *See United States v. Weathers*, 186 F.3d 948, 957 (D.C. Cir. 1999).

2.    *Merits of the Claim*

Further, even if this claim is not deemed waived, the claim is without merit.  The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

Here, petitioner was not prosecuted a second time following an acquittal or a conviction, nor was he punished multiple times for the same offense.  Even assuming that the three charges against petitioner would have constituted the same offense for double jeopardy purposes, the mere charging of multiple counts in a single information does not raise double jeopardy concerns.  As aptly explained by the Second Circuit:

> Where there has been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed. It is well established that "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion," and "a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution...." *United States v. Batchelder*, 442 U.S. 114, 124, (1979). Where two statutory sections operate independently of one another, "there is no bar to the Government's proceeding with prosecution simultaneously under the two statutes." *Ball v. United States*, 470 U.S. 856, 860 (1985); *see Batchelder*, 442

U.S. at 11. In such circumstances, "the Double Jeopardy Clause imposes no prohibition to simultaneous prosecutions." *Ball*, 470 U.S. at 860 n. 7. Even where the Double Jeopardy Clause would bar cumulative punishment for more than one such offense, "the Clause does not prohibit the State from prosecuting [the defendant] for such multiple offenses in a single prosecution." *Ohio v. Johnson*, 467 U.S. 493, 500 (1984); *see, e.g., Ball*, 470 U.S. at 860 n. 8 (" 'there can be no impropriety ... for a prosecutor to file an information containing counts charging violations of' several different provisions of the federal bank robbery statute where there is evidence to support the charges, even though the defendant could not in the end stand convicted of both offenses" (quoting *United States v. Gaddis*, 424 U.S. 544, 550 (1976))).

Accordingly, "[i]f, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense." *Ball*, 470 U.S. at 865. If the jury convicts on no more than one of the multiplicitous counts, there has been no violation of the defendant's right to be free from double jeopardy, for he will suffer no more than one punishment.

*United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006) (parallel citations omitted); *see also*, *McCloud v. Deppish*, 409 F.3d 869, 873 n.3 (7th Cir. 2005). Thus, even if the counts against petitioner were multiplicitous under the Double Jeopardy Clause, because he faced only a single prosecution and was convicted only of one of the offenses, there was no double jeopardy violation.[3] Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Sentencing Claim (Claim II)*

Petitioner next contends that he was denied due process of law because the trial court inaccurately scored his sentencing guidelines. Specifically, under Offense Variable 8 (OV8), the trial court scored 15 points for petitioner's asportation of the victim. Petitioner contends that the victim's testimony that petitioner locked the door of the loss prevention office was perjured. The

---

[3]As discussed below in connection with petitioner's illusory plea claim, it does not appear that a conviction on both CSC-II and gross indecency would violate the Double Jeopardy Clause. The Court need not definitively resolve this question because, as explained above, petitioner's double jeopardy claim is without merit even if conviction on both counts would constitute a double jeopardy violation.

Court should conclude that petitioner is not entitled to habeas relief on this claim.

As a general matter, a habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored the guidelines range raises an issue of state law not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also*, *Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).

Further, petitioner cannot show that OV8 was improperly scored. Although petitioner contends that the victim perjured herself at the preliminary examination by testifying that petitioner locked the door, this challenge to the victim's testimony is barred by petitioner's guilty plea. And, in any event, even if petitioner did not lock the door, the asportation requirement of OV8 was satisfied. It is undisputed that petitioner, under the color of his authority as a loss prevention officer, required the victim to go with him to the loss prevention office. Under OV8, a defendant is assigned 15 points where "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MICH. COMP. LAWS § 777.38(1)(a). In petitioner's case, regardless of whether the door to the room was locked,

the victim was "without doubt asported to another place or situation of greater danger, because the crimes could not have occurred as they did without the movement of defendant and the victim[] to a location where they were secreted from observation by others." *People v. Spanke*, 254 Mich. App. 642, 648, 658 N.W.2d 504, 508 (2003). This is true even if no force was used to accomplish the asportation, and the victim voluntarily accompanied petitioner to the loss prevention office. *See id.* at 645-48, 658 N.W.2d at 507-08. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Sufficiency of the Information (Claim III)*

        In his third claim, petitioner contends that he was denied his right to due process when the trial court denied his motion to quash the CSC-II count of the information. Petitioner contends that the victim's testimony at the preliminary examination did not establish any "sexual contact," one of the elements of CSC-II, and thus that the charge should have been dismissed. The Court should conclude that petitioner is not entitled to habeas relief on this claim, for three reasons.

        First, there is no general constitutional right to a preliminary examination before trial. *See Gerstein v. Pugh*, 420 U.S. 103, 125 n.26 (1975); *Harris v. Neil*, 437 F.2d 63, 64 (6th Cir. 1971). Thus, a state court's failure to even hold a preliminary examination does not present a cognizable habeas claim. *See Scott v. Bock*, 241 F. Supp. 2d 780, 793 (E.D. Mich. 2003) (Lawson, J.). Similarly, therefore, a claim that the evidence offered at a preliminary examination was insufficient for a finding of probable cause is not cognizable on habeas review. *See David v. Lavinge*, 190 F. Supp. 2d 974, 978 (E.D. Mich. 2002) (O'Meara, J.).

        Second, it is an "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein*, 420 U.S. at 119 (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v.*

*Illinois*, 119 U.S. 436 (1886)).  Thus, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119.  Thus, because petitioner is now incarcerated pursuant to a valid conviction, he cannot challenge the preliminary procedures employed prior to his guilty plea.

Third, petitioner's claim fails on the merits because there was, in fact, sufficient evidence presented at the preliminary examination.  Under Michigan law, the "preliminary examination has for its limited purpose only the determination by a magistrate whether there is probable cause to bind the defendant over for trial." *People v. Zaleski*, 375 Mich. 71, 81-82, 133 N.W.2d 175, 180 (1965); *see also*, *People v. McLean*, 230 Mich. 423, 425, 202 N.W.2d 1005, 1006 (1925).  As the Supreme Court has explained, the probable cause determination need not be made on the basis of a full adversarial hearing, and may be based on hearsay and other evidence which would not necessarily be admissible at trial. *See Gerstein*, 420 U.S. at 120.  The probable cause standard for a preliminary examination is the same as the standard for an arrest. *See id*.  This standard is satisfied if the prosecution adduces facts sufficient to warrant a prudent person in believing that the accused has committed the offense for which he is charged. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991). This standard does not require the type of specific evidence which is required to support a conviction. *See Adams v. Williams*, 407 U.S. 143, 149 (1972).

As relevant to petitioner's case, the CSC-II statute provides: "[a] person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists: . . .  (b) That other person is at least 13 but less than 16 years of age and any of the following: . . .  (iii) The actor is in a position of authority over the victim

and the actor used this authority to coerce the victim to submit." MICH. COMP. LAWS § 750.520c(1)(b)(iii). Petitioner contends that the victim's testimony at the preliminary examination did not establish "sexual contact" because she did not testify that petitioner touched her at all, other than to wipe his semen off of her back. Under the CSC-II statute, "sexual contact" is defined as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for: (i) Revenge. (ii) To inflict humiliation. (iii) Out of anger." MICH. COMP. LAWS § 750.520a(q).

In rejecting petitioner's claim, the trial court concluded that the ejaculation of petitioner's semen onto the victim's neck, back, and buttocks constituted a touching of the victim's intimate parts (her buttocks), done for the purpose of sexual gratification. Although there were no Michigan cases directly on point, the trial court relied on a Colorado case reaching this conclusion under a similarly worded Colorado statute, and on a line of Michigan cases holding that the throwing of liquids can constitute an assault without any physical contact between persons. *See* Opinion and Order, in *People v. Charlton*, No. 02-184578-FH, at 3-4 (Oakland County, Mich., Cir. Ct. Aug. 21, 2002) (discussing *People v. Vinson*, 42 P.3d 86 (Colo. Ct. App. 2002); *People v. Boyd*, 102 Mich. App. 112, 300 N.W.2d 760 (1980); *People v. Terry*, 217 Mich. App. 660, 553 N.W.2d 23 (1996)).[4] This determination represents a construction of state law which is not cognizable on habeas review. While a challenge to the sufficiency of the evidence on an established element of an offense raises

---

[4]A copy of the trial court's opinion is attached to petitioner's habeas application as Exhibit E.

a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *In Re Winship*, 397 U.S. 358, 364 (1970), "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[w]hich acts constitute the elements of a state crime is a question generally answerable only by the state legislature and state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing *Mullaney*, 421 U.S. at 691 ("This Court ... repeatedly has held that state courts are the ultimate expositors of state law . . . .")). Thus, as the Second Circuit explained, "*Winship* does not invite federal habeas courts to engage in a substantive analysis of state statutory terms. Our federal constitution does not dictate to the state courts precisely how to interpret their own criminal statutes." *Id*. Or, as the Sixth Circuit has explained, "'[w]hat is essential to establish an element, like the question whether a given element is necessary, is a question of state law.'" *Sanford v. Yukins*, 288 F.3d 855, 861 (6th Cir. 2002) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991).

The trial court determined, as a matter of state law, that the touching of the victim by petitioner's ejaculate was sufficient to constitute a touching of the victim, and thus satisfied the "sexual contact" element of the offense. This represents a determination of state law not subject to attack on habeas review. And, there is no question that there was sufficient evidence presented at the preliminary examination to show that this type of touching occurred. Thus, even if petitioner's probable cause for bind-over claim were otherwise cognizable, the claim is without merit. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Plea Claims (Claims IV-V)*

Petitioner next raises several challenges to the validity of his plea itself.  Petitioner's two principal arguments are that his plea is invalid because: (1) the trial court failed to establish a factual basis for the plea; and (2) the plea bargain was illusory.  Petitioner also claims that the plea was involuntary because he did not understand the consequences of the plea and the charge to which he pleaded guilty was not supported by the evidence, namely, that there was no sexual contact and that the statute is unconstitutionally vague.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Lack of Factual Basis*

Petitioner first contends that his plea was not supported by a factual basis.  This claim fails to state a basis for habeas relief.  "The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution[.]" *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995).  Because the writ of habeas corpus exists only to correct errors of federal law, therefore, a state court's failure to elicit a factual basis for a guilty plea does not state a claim cognizable on habeas review.  *See United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Coddington v. Langley*, 202 F. Supp. 2d 687, 702 (E.D. Mich. 2002) (Tarnow, J.).  Accordingly, petitioner is not entitled to habeas relief on this claim.

2.    *Illusory Plea Bargain*

Petitioner also contends that his plea bargain was illusory.  Although the scope of petitioner's argument is not entirely clear, it appears that petitioner's illusory plea claim is based on his arguments that (1) the prosecution did not give up anything by allowing him to reserve his right to

appeal the denial of his motion to quash, and (2) he could not have been convicted of all three offenses, and thus he received no benefit by the prosecutor's agreement to drop the other two charges. The Court should conclude that this claim is without merit.

It is not clear that petitioner could not have been convicted of all three offenses, and indeed the contrary appears to be the case. Under the Double Jeopardy Clause,

> [i]n both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not in contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution.

*United States v. Dixon*, 509 U.S. 688, 696 (1993) (citations omitted). Here, the elements of CSC-II as charged against petitioner were (1) a sexual contact, defined to included any touching of the clothed or unclothed intimate parts of the victim or defendant; (2) with a victim between 13 and 16 years of age; and (3) done for a sexual purpose. *See* MICH. COMP. LAWS § 750.520c(1)(b)(iii). The second charge, gross indecency, *see* MICH. COMP. LAWS § 750.338b, does not require a sexual purpose or a particular age, and may occur between consenting adults. *See People v. Hank*, 219 Mich. App. 299, 307, 556 N.W.2d 187, 191 (1996). Thus, gross indecency may be established even where the elements of CSC-II are not established. Likewise, CSC-II may be established even where the elements of gross indecency are not established. CSC-II requires only "sexual contact" as broadly defined in § 750.520a(q). Gross indecency, on the other hand, requires either (a) something more than mere sexual contact (or even mere sexual penetration), *see generally*, *People v. Holland*, 49 Mich. App. 76, 211 N.W.2d 224 (1973); *People v. Danielac*, 38 Mich. App. 230, 195 N.W.2d 922 (1972), or sexual acts in a public place, *see People v. Williams*, 237 Mich. App. 413, 415-17,

603 N.W.2d 300, 301-02 (1999), *vacated in part on other grounds*, 462 Mich. 861, 613 N.W.2d 721 (2000). Thus, because each statute has at least one element not included in the other offense, under the *Blockburger* test petitioner could validly be convicted on both counts.

The Court need not definitively resolve this question. As the foregoing discussion makes clear, petitioner's claim that he could not have been convicted of gross indecency or indecent exposure had he also been convicted of CSC-II is, at best, doubtful. As the Supreme Court has explained, a guilty plea is not "compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady*, 397 U.S. at 751. The Court in *Brady* did explicitly "make no reference to the situation where the prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce a particular defendant to tender a plea of guilty." *Id*. at 751 n.8. Contrary to petitioner's argument, however, he cannot show that the prosecutor deliberately employed his charging powers in an improper manner because, as explained above, these charges were at a minimum arguably permitted under the *Blockburger* test. Accordingly, petitioner cannot show that his plea was illusory, and he is not entitled to habeas relief on this claim.

3.    *Voluntariness of the Plea*

With respect to petitioner's remaining attacks on the voluntariness of his plea, the transcript of the plea hearing establishes that petitioner is not entitled to habeas relief. A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir.

1994).  The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea.  *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153.  A solemn declaration of guilt by the defendant carries a presumption of truthfulness.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge*, 431 U.S. at 74.  Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).  Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

With respect to the voluntariness issue, petitioner does not contend that he was coerced into pleading guilty or that the decision was not his own, nor could he given that he stated at the plea hearing that he had not been threatened or coerced into pleading guilty.  *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").  Likewise, petitioner does not contend, nor could he, that he did not receive sufficient explanation of various things required to make his voluntary.  The Supreme Court cases discussing the validity of guilty pleas under the Due Process Clause establish three things of which a defendant must be informed before a guilty plea is knowing and voluntary: (1) the actual charge against the defendant, *see Bousley v. United States*,

523 U.S. 614, 618 (1998); (2) the direct consequences of the plea, *see Mabry*, 467 U.S. at 509; and (3) the rights that the defendant is waiving by pleading guilty, *see Henderson*, 426 U.S. at 645 n.13. As discussed in part B of this Report, *supra*, the plea hearing transcript establishes that petitioner was informed of each of these things. That petitioner did not know the exact sentence he would receive or how his guidelines would be scored does not render his plea involuntary, because he was informed of the maximum sentence he faced. *See United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990), *quoted with approval by United States v. Awad*, No. 91-1856, 1992 WL 354084, at *1 (6th Cir. Nov. 30, 1992) (per curiam). Nor does petitioner's attacks on the sufficiency of the evidence supporting the CSC-II charge or the constitutionality of that charge render his plea involuntary, because as explained in other portions of this Report those attacks are without merit.

In short, the transcript of the plea hearing shows that petitioner was informed of the charge against him and the possible penalties, understood the rights he was waiving by pleading *nolo contendere*, and voluntarily entered his plea. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his involuntary plea claims.

H.      *Ineffective Assistance of Counsel (Claim VI)*

Petitioner next contends that his trial and appellate attorneys rendered constitutionally ineffective assistance. Specifically, he contends that trial or appellate counsel, or both, were ineffective for failing to (1) introduce relevant DNA evidence; (2) argue that the statute was void for vagueness; (3) advise him that the trial court would use the preliminary examination transcript to establish a factual basis for the plea; and (4) allowing him to plead to an illusory plea deal. The Court should conclude that petitioner is not entitled to habeas relief on these ineffective assistance claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy

the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828. With respect to appellate counsel, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

2. *Analysis*

Petitioner first contends that counsel was ineffective for allowing him to plead guilty in light of the DNA evidence. Petitioner contends that the DNA results show that the profile from the rectal swabs detected the victim's DNA, not his. While this was a conclusion of the report, *see* Pet., Ex. C, petitioner's argument proves too much. The rectal swab was an internal swab (hence, rectal), and there was no allegation that petitioner had penetrated the victim. Other swabs were taken of the victim's lower back and buttocks, and the forensic report clearly distinguishes between these swabs and the separate rectal swab. And, the lower back swabs, which presumably included the buttocks swabs since they were treated together, showed the presence of petitioner's DNA. It is not clear therefore how this DNA evidence would have helped petitioner's case. And, in any event, it is clear that petitioner himself knew of these test results and their implications prior to his plea, yet still decided to enter the plea. *See* Pet., Ex. C5 (letter from petitioner's counsel to petitioner concerning the DNA evidence and plea offer).

Petitioner's claim that trial counsel failed to challenge the sufficiency of the evidence is belied by the fact that counsel filed a motion to quash the CSC-II charge on the basis that there was no sexual contact. Likewise, appellate counsel raised this issue on direct appeal.

Petitioner cannot show that he was deprived of the effective assistance of counsel by counsel's failure to inform him that the court would rely on the preliminary examination transcript to establish a factual basis for the plea. Petitioner contends that, had he known of this, he would not have entered the plea because the victim's testimony was perjurious. Again, however, petitioner cannot show how this impacted his decision to plead *nolo contendere*. Petitioner knew of any inaccuracies in the victim's preliminary examination testimony at the time he pleaded guilty, and had he thought those inaccuracies would create a reasonable doubt he would not have entered his plea. On the contrary, regardless of the underlying means of obtaining a factual basis were, petitioner indicated in no uncertain terms that he was pleading *nolo contendere* because he was guilty. *See* Plea Tr., at 8. Further, petitioner's own version of events provides a factual basis for the plea. In his version of events, petitioner admits that the victim disrobed, that he masturbated, and that he ejaculated on the victim's backside. *See* Memo. of Law in Supp. of Pet., at 15-16. Petitioner claims that the victim initiated the encounter to avoid responsibility for her shoplifting and was a willing participant, but this fact is irrelevant. The CSC-II statute is a statutory rape statute, and thus all the prosecution was required to show was sexual contact with the underage victim who was under the authority of petitioner. Thus, any perjury on the part of the victim was immaterial to the elements of the offense. Finally, petitioner does not explain how the use of the preliminary examination transcript to establish a factual basis affected him in any way. Those facts testified to by the victim merely provided a basis for entering the plea; they are not conclusively established for any other purpose, nor does petitioner allege how those facts have had consequences beyond the plea itself. In these circumstances, petitioner cannot establish that he would not have pleaded *nolo contendere* but for counsel's advice.

With respect to petitioner's claim that trial and appellate counsel were ineffective for failing to argue that the statute was void for vagueness, as discussed in the next section of this Report petitioner's vagueness claim is without merit, and thus counsel were not ineffective for failing to argue the claim. Similarly, as explained earlier in this Report, petitioner's plea was not illusory, and thus counsel was not ineffective for allowing him to plead pursuant to an allegedly illusory bargain.

In short, the record establishes that petitioner was aware of the nature of the charges, the evidence against him, and possible legal and factual defenses. With this understanding, petitioner voluntarily chose to plead *nolo contendere*. The claims petitioner argues should have been raised by counsel either were raised or are without merit. With respect to any of his claims, petitioner has failed to establish that but for counsel's deficient performance, if there was any, he would not have pleaded *nolo contendere* and would have insisted on going to trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

I.      *Vagueness of CSC-II (Claim VII)*

Finally, petitioner contends that he was denied due process of law because the CSC-II statute, in particular the "position of authority" element, is unconstitutionally vague. The Court should reject this claim.

"It is axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed." *Williams v. Nix*, 1 F.3d 712, 716 (8th Cir. 1993). *See generally*, *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 519 (1994) (internal

quotation omitted); *see also*, *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). A statute is unconstitutionally vague only if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Batchelder*, 442 U.S. 114, 123 (1979) (internal quotation omitted). However, to be valid "[t]he statute need not define with mathematical precision the conduct forbidden . . . . Instead, to succeed on a claim of unconstitutional vagueness, . . . the complaining party must show that the statute requires a person to conform his conduct to an imprecise but comprehensible normative standard. Instead, the complaining party must prove that no standard of conduct is specified at all." *Columbia Nat. Resources, Inc. v. Tatum*, 58 F.3d 1101, 1108 (6th Cir. 1995) (internal quotations and citations omitted).

Here, the statutory prohibition on engaging in sexual contact with a person 13-15 years old where "the actor is in a position of authority over the victim and the actor used this authority to coerce the victim to submit," is not unconstitutionally vague because the terms "position" and "authority" have commonly understood meanings which a person of reasonable intelligence would comprehend. "Position," in the context used in the statute, is commonly understood to refer to employment, status, or social rank. *See* Merriam-Webster Online Dictionary, at www.merriam-webster.com/dictionary/position, def. 5. "Authority" is commonly understood to mean the power to influence or command thought or behavior. *See id.*, at www.merriam-webster.com/dictionary/authority, def. 2. Thus, the phrase "position of authority" has a common meaning, to wit, the power to influence or command another by virtue of employment, status, or social rank. And as applied to petitioner–a store security guard effectuating what amounted to a citizen's arrest by virtue of his employment status–it is clear that the statutory "position of authority" element was not impermissibly vague as applied in petitioner's case. *Cf. State v. Mogler*, 719

N.W.2d 201, 206-07 (Minn. Ct. App. 2006); *State v. Thomas*, No. 85155, 2005 WL 1245635, at *2 (Ohio Ct. App. May 26, 2005); *Scadden v. State*, 732 P.2d 1036, 1042-43 (Wyo. 1987). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically,

and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 6/12/08

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record by electronic
means or U.S. Mail on June 12, 2008.

                    s/Eddrey Butts
                    Case Manager